Our final case this morning is No. 15-1079, Rembrandt Vision Technologies v. Johnson & Johnson Vision Care. Mr. Magnuson. Good morning. May it please the Court, for the record, Eric Magnuson on behalf of Rembrandt Vision Technologies. Appellate courts can and do reverse discretionary decisions of the lower courts. They do so when those courts commit an error of law, make erroneous findings of fact, or otherwise exceed the bounds of their broad discretion. This is that case. Here we have a prevailing party below who, after the fact we have learned, presented a witness who admittedly, there is no dispute about this, committed perjury. He lied about his qualifications. He lied about what he did to form his opinions. He lied about who did the tests which concealed their results. And based on that, we are entitled to a new trial. More than that, there was a failure in this case producing... He testified, though, only on the coating issue, right? Pardon? He testified only on the coating issue. On the layer issue, yes. Yes. He did not testify on the sure de-hardness issue. He did not, Your Honor. But didn't he testify on Dr. Beebe's credibility? Didn't he refer... That was my point. I just want to make sure you don't sort of give away something that seems important to your case. Well, I was going to get there, Your Honor. But you probably ought to get there in response to questions that ask you very directly what he testified to, how it affects... Thank you for the help, Your Honor. He castigated Dr. Beebe. He said that if I had been asked to peer review... Because of what he did on the coating issue. Right. He said if I had been asked to peer review what he did, I would have said no. He called him a liar. He called him incompetent. That clearly played into the decision of the trial judge to strike Dr. Beebe's testimony on the soft issue. He was portrayed... Wait a moment. Where does the trial judge rely on that? I think it's a fair inference, Your Honor. Well, I guess. But he didn't say that, did he? He did not. He did not. The other error that the trial court made here is that it said, you have to prove complicity. I have to have evidence of complicity. He looked, I think, outside of the Eleventh Circuit, which is controlling the court. So you agree that complicity is something the court can consider, right? Pardon? Complicity certainly is a factor that the court could consider, right? I think it's a factor that the court can consider. I think a fair reading of 60B3 requires some consideration of it. But the Eleventh Circuit stands out among circuits with regard to expert testimony. Moore's Federal Practice says that the Eleventh Circuit assumes that there is complicity when expert testimony is presented. They base that on Hare. They base that on Bonner. And I think that that's a fair reading. So you prefer to not assume complicity? That's your assertion? I think if there is clear and convincing evidence of perjury, and it is of an expert witness that lawyers hire, they direct, they help form the opinions, and then they present them in court, I think in the Eleventh Circuit, there is an assumption that there is perjury. So would that equally apply to Professor Tew? Perjury, but not complicity. Well, I'm sorry. There's complicity, yes. Your question, Your Honor? Would that apply equally to your expert, Dr. Beebe? Dr. Beebe didn't commit perjury. He miswrote his opinion. But he seemed to lie on the stand, didn't he? Well, he changed the method by which he tested. But he lied about the methodology that he used, no? Well, Your Honor, I don't believe that that's a fair reading of the evidence, but it's not the issue here. The question is whether we were deprived of a full and fair opportunity to present our case because of Dr. Belowski's perjury. And I think the mistake that Judge Corrigan made was he saw this as a subtraction problem. He said, okay, Johnson & Johnson had a perjurious witness. If we take his testimony out of the trial, no change in result. Because of the sure deed. Because of the sure deed, and because of all the other evidence and everything. And that's a fundamental legal error. Because the test isn't change the result at trial. The test is deprived of a full and fair opportunity to litigate. Yeah, but that's your problem. He found that there was a full and fair opportunity and that the verdict was supported by untainted evidence. And he found that only by looking at the box of evidence that is the trial. You yourself, on the first appeal here, said that if Dr. Beebe had been forthright in testifying, and that had been disclosed beforehand He must have been taking into account the perjury when he said that. The opinion that he's dealing with. Your Honor, it is. My point in referring to Dr. Beebe and referring to particularly Heer and Rozier out of the 5th or the 11th now. You look not just at the trial, but you look at how the case evolved. Dr. Belowski's perjured testimony came to this case way before trial.  Hazel Atlas Glass says when you've got perjury and fraud in a case you don't go parse exactly how it came out. How many days was this trial? It was about 2 weeks, Your Honor. About 2 weeks. And how much of the trial was devoted to the surface limitation? A fair amount, Your Honor. Most? Most. How much of the trial was devoted to the soft limitation? Not as much because in the context of what had run up to the trial it was a relatively minor issue. In fact, Judge Corrigan said it should have been a layup. These are hydrogel lenses. They are significantly... I'm sorry to interrupt, but when you say not as much can you qualify that a little bit or quantify it a little bit? Do you mean a day, a couple hours, a few minutes? I can't, Your Honor. I apologize for that. My point is this, though. You're now looking at the trial. It's the same error that Judge Corrigan made. Discovery. Things that are disclosed in discovery inevitably impact the preparation for trial. The 11th Circuit cases are clear on that. Rozier, Hare... You would have spent more time on the Shore D issue? Absolutely. But the point is, under Hazel Atlas Glass when you've got fraud in a case you don't go back and parse that out. Your argument is probably there wouldn't even have been a trial if all of this had come out because the almost entirety of their defense was the surface limitation and it was all hinging on Bialski. The other two experts did no independent testing, right? They just relied on his testing. So if he's gone and his testing's gone they had no defense left on the surface layer. Well, they had their own witnesses who'd say we didn't have a coding and in our mind coding equaled layer. But you're right. At a minimum we would have had a shot at summary judgment. Which is why the judge with all due respect trial judges try to protect the judgments that their courts render. And they should. It should be hard. On the other hand he invited the reader of his order to go back and read the transcript of the three hour hearing on this and I think it's very illuminating. He started off by saying when I first heard about this perjury he described it as sour grapes and cocktail chatter. And so he denied discovery on it. Later on he said in retrospect that was probably ill-advised. It certainly was. Let's not come down too harshly on him. Dr. Beebe imploded visibly on the stand. I read the entire transcript. He imploded visibly. This guy presented credibly at least based on the record I read and who really could have imagined This is like David Baltimore going back decades ago. Who could have imagined an expert would have gone that far afield from appropriate behavior and fully and completely purged himself. I agree. It was outrageous. It's hard to have imagined or expected the district court to think that that were likely or to expect their lawyers to have thought it to that matter. But even when Judge Corrigan was presented with uncontradicted and now admitted evidence of actual perjury he still wouldn't let us do discovery. He said complicity What was the purpose of the discovery? The discovery was to show the involvement of counsel in preparing Dr. Belowski for his testimony. If you want to breach the attorney-client privilege or the work product privilege you've got to show crime fraud. I didn't see you make that showing. I didn't see anywhere you even alleged it. You don't just get to pierce the privilege or the work product privilege without falling into one of the exceptions. It's not privilege because it's not communication with the client. It is work product. Work product is substantial need and inability without undue hardship to obtain. That's not fraud.  in the 11th Circuit in order to get work product out of the attorney? I don't believe so. What do you think the standard is? It's the work product standard. The rule says work product is not subject to discovery unless there is a showing of substantial need and an inability to obtain it without undue hardship. We're not talking about communications with clients. We have a situation where there are 23 emails between Dr. Belowski and all the people at the lab that actually knew what they were doing in the two or three days before Dr. Belowski's deposition. It's a fair inquiry based on those facts that we've been able to drag out of the case. None of those emails, none of that information, and it's all quite damning of Belowski, there's no doubt about that but not one of them implicates anything about the attorneys. Not one of them suggests any complicity at all and under those standards it's hard for me to conclude that the district court abused his discretion when not upholding what I think of as one of the sacrosanct and most important types of privilege that exist which is attorney-client slash work product. John, it probably would change your mind if we were able to produce evidence that at one o'clock on a specific day, two days before he gave his deposition Dr. Belowski sent an email to Dr. Dolkan saying, how do you do this again? And at the same time we find out he's meeting with a Johnson & Johnson lawyer. No, it probably wouldn't change my mind actually. Your Honor, if he's meeting with the lawyer and he has to take a break to go ask how to do something that would be powerful evidence I believe that they should have known. But we get back to the question of if in the 11th Circuit you have an expert witness who perjures himself there is an assumption according to the way Moore reads the case, and I think a fair reading of the cases that there is complicity. But if you have to show actual prejudice, right? Your Honor, we just talked about prejudice. Yes, well, that's part of the argument. Do you contend that the jury  that the short D hardness limitation was satisfying? It could have, Your Honor. Your Honor, if we go back to trial, there's... No, no, no, that's not my question. On this record... Yes, I do. How? Well, Your Honor, there is lots of short D evidence that went beyond Dr. Bilas, or Dr. Beebe's testimony. It's recited at pages 23 and 24 of our opening brief in 17 to 19 of the reply brief. That was admitted into evidence? It was in the case. Was it admitted into evidence? Not all of it, no. I'm talking about the record that was made here. How could the jury have reached a conclusion on this record that was before it, that the short D requirement was satisfying? That is not the test, with all respect. You're not answering my question. I'm not sure they could have, Your Honor. I'm going to be straightforward with you on that. But let me say, that is not the test. When you say you're not sure they could have, can you just be clear that you don't remember all of the record evidence so that if somebody else thought it was, you didn't just waive it? I will do that, Your Honor. In fact, I'd like to be able to consult with my colleague, Mr. Holdreth. Because, I'll just give you a little hint, your brief to us, last time around, had lots of other evidence, and we have a paragraph at the end of our opinion that says we're not going to reach this additional evidence at this time. And so I would hate for you to sort of stand here and give that all away. Thank you for the help, Your Honor. I don't want to give it away either. I believe that I'm in a very good time. I have a question. I'm a little bit confused by your position right now because you were talking about how there should be some sort of inference of complicity. Have you abandoned your argument that complicity is not required? Your Honor, I think the argument goes like this. In the Eleventh Circuit, when an expert witness is complicit, we don't have to affirmatively prove it. Okay, my question is, in your brief, you argued that the district court erred by even considering it requiring complicity. So, have you abandoned that argument? We have not, Your Honor. What we're trying to say is the court erred by requiring proof of actual complicity. Okay, that's a legal error. What he did is he recited the Hare case in the Eleventh Circuit authority, then he cited all sorts of non-Eleventh Circuit authority and concludes with a Seventh Circuit case, Metlin, and the Seventh Circuit is probably the polar opposite of the Eleventh Circuit. I'll reserve the rest of my time. You've only got 30 seconds. We'll give you two minutes, Mr. Mack. Thank you very much, Your Honor. Mr. Discamp? Thank you, Your Honor. I'm Gregory Discamp, representing the appellee, J&J VisionCare. Dr. Bilaski's false testimony was an affront to the judicial system. It wound up ruining his career. It was highly embarrassing to us. It caused the district court to give great attention and seriousness to this motion, which he very carefully considered through a lengthy hearing and many submissions. In the end, he found that the false testimony had to be balanced against the interest in finality in the jury's verdict and just result. He presided over the trial. He was not surprised by the outcome, which he followed very closely, and he found that the trial was a fair trial, although not a perfect trial. How can you defer to the finality of the jury's verdict when your primary expert on the surface layer limitation, the one who did all of the testing, when we now discover it's all perjury, I mean, you know, it has to be thrown out. So how can you defer to the jury verdict? That was, I read the entire trial transcript, that was your primary defense at trial on infringement. The jury found no infringement.  verdict wasn't tainted by that evidence? I'm glad you asked, Your Honor, because Dr. Bilowski was, that was our primary defense, but Dr. Bilowski was not remotely our primary witness. He's the only witness that performed any testing, and your other witnesses relied on that testing and referenced it. They referenced it, they talked about it, they agreed with it. By and large, that's not correct. The only witness I recall who mentioned Dr. Bilowski's testimony was Dr. Paul. You can't possibly be arguing that if the jury verdict rested on non-infringement of the coding limitation that Dr. Bilowski's testimony wasn't highly pertinent there. I can. I can. I'll tell you why. If you'll indulge me, I'll tell you why. Their case was based on Beebe's testing. That completely collapsed after his cross and their case was in tatters. Our case was you can't test for this using TOF, CIMS, and XPS. Our witnesses were fact witnesses, but they were experts. They were the scientists who developed this product, the scientists who invented it, the head of R&D, the head of manufacturing, the head of clinical research. They all offered extensive first-hand information about the development of the product and that it was homogenous, clear through. That's why it had the optical clarity and made it number one in the market. They were all extremely knowledgeable about what they were talking about. Then we put on three experts, one of whom was Dr. Steppen who criticized Dr. Beebe, one of whom was Dr. Paul who criticized Dr. Beebe. Their criticisms of Dr. Beebe's work was based on its scientific flaws, not because of what the scientific flaws in Beebe's testing would have warranted Dalberting that evidence had the judge had to reach it. It ignored... You can't say that the jury's verdict didn't rest on Dr. Belowski's testimony. You can't say that, right? I can't say it rested on it. I don't believe it did rest on it. You don't know whether or not it did because it's a general verdict. Of course that's correct. But the district judge found that the principal impact of Belowski's testimony would have been to exclude Belowski or to cross-examine him. I think the reality is excluding him would have been the right answer. You're going to have to... I'm happy to move on. You had another defense which you prevailed on later on. The court found that the jury verdict could have been and Dr. Beebe was their witness on the Schordy hardness limitation and he collapsed, right? That's correct. It accounted for about 5% of the trial time. It was a very small part because we didn't put on any evidence on Schordy after his collapse. The answer to the impact of Belowski on this ruling was none. The judge says that A5398 when he's announcing the ruling there's an announcement in the court's ruling it was a ruling the court was prepared to make after the original argument but for reasons of judicial economy the court deferred to let the case go to the jury. Belowski criticized Beebe, everybody criticized Beebe, but Beebe's collapse was his own and prevail on a 60B3 motion they have to show by clear and convincing evidence that somehow Belowski's false testimony interfered with their ability fully and fairly to present the soft limitation. I think respectfully that all they have is speculation that's well short of clear and convincing evidence. This was not a summary judgment case. Beebe would not have gone back and Do they have to prove that they would have prevailed or just that they were denied a full and fair? That's the right test, Your Honor. Full and fair. But the question is how can they show by clear and convincing evidence that they were denied a full and fair opportunity to try the soft limitation? Belowski had nothing to do with it. That's not what the test is. The test isn't where you denied a full and fair opportunity on this limitation, on this issue, on this issue. It's where you denied a full and fair opportunity at trial. For example, suppose that you misled them into believing that you stipulated for the most part to the soft limitation or something like that and so all of their evidence went somewhere else. Let me get to that because if you look at the 30B6 cases, excuse me, the 60B3 cases, I'm sorry. If you look at the 60B3 cases they grant new trials only on issues that are tainted. So if you look, for example, at this court's decision in this case, there's false testimony on one accused product and not on the other. The new trial is only on the accused product tainted. If you look at the 11th Circuit decision in Bonner... Even not separating claim limitations... No, no, no. Well, that's right. So if you go to something like the 7th Circuit decision in Sarkey's Tarzian, there was a JAMAL, judgment as a matter of law, just like there was here. There was a 60B3 motion based on new evidence. The court found the new evidence didn't change the underpinnings of the JAMAL. So there was no new trial. The JAMAL stood. That's where we are. We have a JAMAL. We have a judgment as a matter of law. But one of the things that the JAMAL was predicated on, in fact, the only thing reached on appeal, was the exclusion of Dr. Beebe. What, if anything, did this district court judge say about now, in light of what he knows about Bialski? Because the exclusion was discretionary. He could have adopted lesser sanctions under Rule 37. He could have done different things. So what is it that this district court judge said, if anything, on this record, anywhere in this record, about what he might have done differently regarding the exclusion of Dr. Beebe, in light of all of this new information? First off, the exclusion was discretionary. This court affirmed the discretionary ruling. We affirmed it wasn't abuse of discretion. There was a Daubert ruling as well, that the evidence was not reliable science. I think the question is directed to both the Daubert ruling and the Rule 37 sanction. Both of those are discretionary. And the suggestion is that if the judge had known about the perjury at the time, he might have reached a different discretionary decision with respect to those. That's the issue you need to address. Respectfully, I would disagree that Daubert's discretionary at the district court level, if you find that it's scientifically baseless, you must exclude the evidence. The obligation on the district court is the gatekeeper. Except that, hold on, it may well be that part of the reason he found we don't know, Dr. Beebe's testimony so unreliable was that Dr. Bialski three times called him dishonest and a liar and said that his results couldn't be believed. Now, I will grant you, Beebe imploded, at least with regard to the soft limitation on the stand, but we still have the admitted perjurer impugning the character of the other witness, and we have a record in which this district court judge said he, after everything that he's heard, he doesn't think Beebe's credible. But everything he heard included the one guy calling him a liar, who we now know is the biggest liar of all. So what do we do? Well, first off, he excluded Dr. Beebe based on Dr. Beebe's testimony and the cross of Beebe, which occurred on their direct case, and he said in the excerpt I just read to you, he was fully prepared to make that ruling at the time. What, if anything, do we have, the original question, I'm sorry, is what, if anything, do we have on what he would have done vis-a-vis Beebe? Is there any reason to think that he would or would not have done the same thing with regard to Beebe had he known about Bialski? Yes, there is reason to think he would have done the same thing because in footnote nine of this opinion. Of which opinion? The opinion on appeal, today's opinion. Footnote nine, he says, after upholding the, after rejecting their challenge with respect to the surface layer. Can you tell me what page of the appendix that's on? A15, I'm sorry. A15, okay, give me a sec. Footnote nine. In footnote nine, he says that he's saying they had a full and fair opportunity to try their case on the surface layer and denies them relief, even without considering that J.J.V.C. was entitled to judgment as a matter of law. I don't see a bit of hesitation there. I don't understand. What are you saying I should interpret about this? I am saying that in this opinion, the district judge repeats that we were entitled to judgment as a matter of law. Oh, he says without considering whether you were entitled to judgment as a matter of law. He doesn't say he doesn't say you were entitled to it, he says this is true even without considering that issue. Respectfully, I read it somewhat differently than you are. This is true even without considering, oh, okay. You have to read it in its content. He's basically rejecting their arguments even without considering our separate argument that we were entitled. And I think that there's nothing in this written opinion that suggests that the district court had a moment's doubt about the propriety of excluding the TV. And he did express a moment's doubt, didn't he, at one of the hearings? He posed the question, which any, I think, serious jurist would do. Does this matter? Let me read it to you. I guess my problem with it is, or my query is that I don't think, I'm not sure I would have gotten to the place where I'm, I sure, I may not have gotten to that different place. I may have done something different, and something different may have happened if I had known at the time Dr. Beebe's shortcomings came out during trial, they were obvious, and he goes on and on, but, I mean, he's suggesting that he may have done something very different under Rule 37. He's certainly stammering and anything in his opinion is saying, you know what, now that I've thought it through, I would not have done anything different. I would have excluded Beebe. That's part of the problem. I would read it differently. I would read footnote 9 as saying what I've been arguing it says, and footnote 10 on the next page, A16, is saying if Belowski's misconduct had come to light during trial, the court surely would have taken remedial action. Remedial action involves Dr. Belowski. I think it is a Wait, for him to say, well, I sure as heck would have taken remedial action doesn't mean that that remedial action may not have resulted in allowing Dr. Beebe. I mean, that's part of my problem. If he had allowed Dr. Beebe in his discretion because he found that it was really unfair to you that you all didn't have the information on precisely how Dr. Beebe did the test beforehand, but you know what? It seems a lot less unfair when it's discovered that nobody had the information on how your expert did his testing until never after the trial, basically. You can see that, you know, when you're kind of comparing, there's a lesser of two evils for sure here. I'm not saying there's no evil present. I'm saying there's a lesser of two evils and maybe under that theory he may have allowed Dr. Beebe to go forward and Well, that's exactly what my problem is. I mean, I look at the it's the same line of question. I look at this record and I see the argument that you made, and you made the argument to the district court that the summary judgment, that the JAMAL was an independent ground here, unaffected by the perjury with respect to the coding limitation. And I look at the record and I'm not sure that I see that the district court adopted that argument. And I think what Judge Moore is talking about is that we have some sort of vague comments about the summary judgment and exclusion of the evidence in this transcript but when he gets to the final decision here, he doesn't come right out and say, well, we don't have to worry about this because I still would have granted JAMAL I would have excluded the evidence and I would have granted JAMAL on the short de-hardness limitation. And the question is how do we know that he really addressed and resolved that question? Well, he certainly didn't say it in half-purpose and I agree with you on that. However, as I read what he did is he recognized that our argument had force, he said that, and then he wanted, because he's an extremely conscientious, hard-working district judge, he wanted to get to the, to get to analyze in detail the effect of this alleged of this in fact misconduct on the trial. And so he turned to the surface layer and the bulk of his opinion is addressed to the surface layer where he finds no complicity of counsel where he finds they had a full and fair opportunity to litigate the surface layer all, and therefore he denies the motion, all even without considering the JAMAL. You know, I'm not sure that I read the opinion the same way. He certainly said the full and fair opportunity with respect to Shore D. I don't see him saying explicitly a full and fair opportunity with respect to the surface layer. Oh, I'm sorry. I think he said the opposite. Where did he say that? He says I'm just finding where Oh, there it is. I think in the last paragraph on page 10, he says Rembrandt is still not entitled to a new trial because it was not prevented from fully and fairly presenting its case. And then he explains why he thinks that and he says that's concluding that he concludes that even without considering that it was entitled to judgment as a matter of law. And on the soft limitation, I read this entire discussion as a discussion of the surface layer. He talks about the evidence we presented on the surface layer. He talks about the he rejects their arguments that they probably would have. I guess if that's true and we disagree with you that there was a full and fair opportunity to litigate the surface layer issue because of the perjury, then we have to send it back to have him address this other question. I don't think you do. I think you have to find that he made an abuse of discretion that he made a clear error of law that he we won on multiple grounds. We won because there was no complicity because there was no misconduct of the party and they made no showing of that. We won because we had a full and fair opportunity to litigate the case and I believe we won and we should win because the soft limitation precludes further analysis of the question. They didn't win their case. They lost their case. Thank you, Mr. Thank you, Your Honor. The sure evidence in the record is recited at pages 67 and 68 of our opening brief and page 25 of our reply brief. We didn't talk about the discovery misconduct. Remember, Bilowski's a guy who'd never tested contact lenses before. They sent known infringing contact lenses, say, test these with your method to validate it. They never produced the data from that, which in fact showed a profile exactly like their lenses. That's misconduct. That doesn't require complicity. But let me just say this. Counsel's done a good job here as he did before, focusing on the trial. Rozier, Hare, this court's prior decision all recognize that if you have fraud that comes into the case early, at the discovery stage, it shapes the decisions that everyone makes going forward. And that being the case, that's the deprivation of the full and fair opportunity to try the case. It is as we discussed. Maybe we would have moved for summary strategy. Maybe the focus would have been different. We clearly met that standard and Judge Corrigan didn't talk about it. Thank you.